UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV17-00357 JAK (SKx) | Date | August 20, 2021 |
| Title | Jorge Perez v. Performance Food Group, Inc., et al. | | |

Present: The Honorable **JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE**

| D. Rojas | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER RE MOTION FOR AN AWARD OF (1) ATTORNEY'S FEES TO CLASS COUNSEL, AND (2) ENHANCEMENT TO PLAINTIFF (DKT. 198);**

**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (DKT. 200)**

**JS-6: CASE TERMINATED**

## I. Introduction

Jorge Perez ("Plaintiff") brought this putative wage and hour class action in the Alameda County Superior Court. On May 29, 2015, Defendants removed the action to the District Court for the Northern District of California. Dkt. 1. On June 11, 2015, Plaintiff filed a First Amended Complaint ("FAC"). Dkt. 8. On April 13, 2016, Plaintiff filed a Second Amended Complaint ("SAC"). Dkt. 29. On January 6, 2017, the action was transferred to this District. Dkt. 57. On May 23, 2017, Plaintiff filed a Third Amended Complaint ("TAC"). Dkt. 73. The Complaint names Performance Food Group, Inc. ("PFG"), Vistar Transportation, LLC ("Vistar") and Roma Food Enterprises, Inc. ("Roma") as defendants. Dkt. 1-1.[1] On December 15, 2017, an order issued that granted Defendants' motion for summary judgment as to certain causes of action advanced in the TAC, but denied the motion as to others. Dkt. 154.

On January 8, 2018, Plaintiff filed a motion for class certification. Dkt. 157. After Defendants had filed an opposition (Dkt. 160), but before the hearing on that motion, the parties stipulated to stay the case pending the completion of a mediation. Dkt. 165. That stipulation was approved on March 1, 2018. Dkt. 166. Shortly after a mediation held on July 26, 2018, with private neutral Michael Dickstein, the parties filed a notice of settlement. Dkt. 169.

On December 3, 2018, Plaintiff filed a motion for preliminary approval of class action settlement as well as a stipulation for settlement and release of class action claims (the "Preliminary Approval Motion"). Dkt. 176. In connection with the Motion, Plaintiff also filed the relevant stipulation for settlement and release of class action claims. Dkt. 176-2. On January 23, 2019, in response to an order issued on

---

[1] Roma was dismissed as a defendant on May 9, 2017. Dkt. 72.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-00357 JAK (SKx) | Date | August 20, 2021 |
|---|---|---|---|
| Title | Jorge Perez v. Performance Food Group, Inc., et al. | | |

January 18, 2019 (Dkt. 180), Plaintiff filed a supplemental declaration and exhibit in support of his request for preliminary approval of the proposed allocation of funds to litigation costs. Dkt. 181. The motion also sought leave to file a Fourth Amended Complaint for settlement purposes only. The Settlement Agreement was filed on the docket. Dkt. 183-4.

On September 4, 2019, the Preliminary Approval Motion was granted. Dkt. 185 at 3 (the "Preliminary Approval Order"). Plaintiff's motion to file a Fourth Amended Complaint for settlement purposes only was also granted. *Id.* This approval was conditional on de novo review of the request for attorney's fees and costs in connection with the anticipated motion for final approval of the settlement. *Id.*

On February 10, 2020, Plaintiff filed a Motion for an Award of (1) Attorney's Fees to Class Counsel, and (2) Enhancement to Plaintiff. Dkt. 198 (the "Attorney's Fee Motion"). On March 23, 2020, Plaintiff filed a Motion for Final Approval of Class Action Settlement. Dkt. 200 (the "Final Approval Motion"). Defendants did not respond to either Motion.

For the reasons stated in this Order, the Final Approval Motion is **GRANTED**. The terms of the Settlement Agreement are approved as fair, reasonable and adequate. The Settlement Class is certified for the purpose of settlement. The Attorney's Fees Motion is **GRANTED**. An award of attorney's fees of no more than $258,333.33 to counsel for Plaintiff and the class is approved. An award of $30,390.57 in costs as well as a $5000 incentive award to the named Plaintiff are also approved.

**II.     Summary of the Settlement Agreement**

   A. Settlement Class Definition and Period

The Settlement Class is defined as follows:

> [N]on-exempt warehouse workers employed by PFG in California during the time period of April 20, 2011 through and including the date of preliminary approval by the Court of this Settlement Agreement (the "Settlement Class Period"), whose position was or should have been eligible to use accrued vacation time at an hourly rate higher than their base, regular, straight-time hourly rate and have potential wage and hour claims unreleased by the approved class action settlement in *Laumea v. Performance Food Group, Inc.,* San Bernardino County Superior Court Case No. CIVDS1407509 (the *"Laumea* Settlement"), including without limitation for allegedly unpaid and/or underpaid and/or untimely paid vacation, regular, minimum, and/or overtime wages, alleged forfeiture of accrued vacation or other paid time off, alleged meal or rest break violations, alleged wage statement violations, allegedly unreimbursed business expenses, and related penalties for such violations under the California Labor Code Private Attorney General Act ("PAGA"), but expressly excluding therefrom any individuals who, as of the date of preliminary approval, have filed their own separate action as a named plaintiff alleging the same or similar claims being released by the settlement and/or who has previously released all claims against Defendant being settled and released by [the] Agreement.

Dkt. 183, Ex. 4 ("Settlement Agreement") ¶ 7.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |  | | |
|---|---|---|---|---|
| Case No. | LA CV17-00357 JAK (SKx) | | Date | August 20, 2021 |
| Title | Jorge Perez v. Performance Food Group, Inc., et al. | | | |

B. Relief to the Settlement Class Members

1. Gross Settlement Fund

The Settlement Agreement provides for a gross settlement amount of $775,000 (the "Gross Settlement Fund") in exchange for a release of all claims advanced in this action. Settlement Agreement, Dkt. 183-4 ¶¶ 13-14.[2] This represents an average gross recovery of $684.02 for each of the 1133 members of the Class. Declaration of Shaun Setareh ("Setareh Decl."), Dkt. 199 ¶ 56.

2. Deductions from Gross Settlement Fund

The Final Approval Motion seeks approval of the following allocation of the Gross Settlement Fund:

| | Amount | Percent |
|---|---|---|
| **Gross Settlement Fund** | $775,000.00 | 100% |
| Attorney's Fees | $258,333.33 | 33.33% |
| Litigation Costs (maximum) | $50,000.00 | 6.45% |
| Class Representative Enhancement Payment | $5,000.00 | 0.65% |
| Settlement Administration Costs (maximum) | $15,000.00 | 1.94% |
| Payment to LWDA (75% of PAGA Penalties) | $18,750.00 | 2.42% |
| **Net Settlement Fund (includes 25% of PAGA Penalties)** | $427,916.67 | 55.22% |

a) Attorney's Fees and Litigation Costs

The Settlement Agreement provides that Class Counsel may apply for an award of attorney's fees in amount up to one-third of the Gross Settlement Fund, *i.e.*, $258,333.33. Settlement Agreement, Dkt. 183-4 ¶ 18. It also provides that Class Counsel may apply for reimbursement of up to $50,000 in litigation costs. *Id.*

b) Class Representative Enhancement Payment

Under the terms of the Settlement Agreement, the named Plaintiff, Jorge Perez, would receive an enhancement payment of $5,000 for his work on behalf of the Class in this action. This enhancement payment would be in addition to any distribution to which he is otherwise entitled as a member of the Class. Settlement Agreement, Dkt. 183-4 ¶ 19.

---

[2] The Settlement Agreement includes what the Motion refers to as "an escalation clause." Thus, if the total number of workweeks for which a settlement payment would be eligible is more than 10% higher than the parties' projection, Defendants have the following options: agree to increase the Gross Settlement Fund proportionally; terminate the Settlement Agreement, or negotiate with Plaintiffs as to a potential agreement on a different calculation. Settlement Agreement, Dkt. 183-4 ¶ 23.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-00357 JAK (SKx) | Date | August 20, 2021 |
|---|---|---|---|
| Title | Jorge Perez v. Performance Food Group, Inc., et al. | | |

    c)    Settlement Administration Costs

The Settlement Agreement provides that administrative expenses incurred by the Settlement Administrator in an amount not to exceed $15,000 will be paid from the Gross Settlement Fund. Settlement Agreement, Dkt. 183-4 ¶ 21. The parties have selected Simpluris, Inc. as the proposed Settlement Administrator. *Id.*

    d)    PAGA Payments

The Settlement Agreement provides that $25,000 of the Gross Settlement Fund will be allocated to PAGA penalties, of which $18,750 will be paid to the California Labor and Workforce Development Agency ("LWDA"). Settlement Agreement, Dkt. 184-3 ¶ 17. The remaining $6250 will be distributed to members of the Class as part of the Net Settlement Fund. *Id.*[3]

    3.    Calculation of Individual Settlement Payments

Each member of the Class will receive an individual settlement payment unless he or she opts out. Settlement Agreement, Dkt. 183-4 ¶ 22. As noted above, if all proposed deductions are approved, the Net Settlement Fund, *i.e.*, the aggregate amount available for such payments, would be approximately $427,916.67, or an average of $643.48 per member of the 1133-person Class. Payments will be mailed to Class members. *Id.* No funds will revert to Defendant. *Id.* ¶ 31. Instead, any checks that have not been negotiated after 180 days will be transmitted to the State of California Controller's Office, Unclaimed Property Fund. *Id.*

The amount each individual Class member will receive will be calculated based on a point system. Under that calculation the payment will depend on: (i) how many pay periods the Class member worked during the Class Period; and (ii) the nature of the work performed. *Id.* ¶ 24. The Settlement Agreement provides that each pay period worked during the Class Period will be assigned a point value as follows:

| **Nature Of Pay Period** | **Points Per Pay Period Worked During Settlement Class Period** |
|---|---|
| Worked in Warehouse Position That Received Non-Discretionary Incentive Pay But Vacation Was Paid Only At Base Regular Rate, During Settlement Class Period Through December 31, 2015 (to the end of the *Laumea* Settlement Class Period) | 1.00 |
| Worked in Warehouse Position That Received Non-Discretionary Incentive Pay But Vacation Was Paid Only At Base Regular Rate, During Settlement Class Period On or After January 1, 2016 (after the end of the *Laumea* Settlement Class Period) | 1.50 |

---

[3] This proposed distribution of PAGA penalties is consistent with the principle that "civil penalties recovered under PAGA are distributed 75 percent to the LWDA and 25 percent to the aggrieved employees." *Thomas v. Home Depot USA Inc.*, 527 F. Supp. 2d 1003, 1007 (N.D. Cal. 2007).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-00357 JAK (SKx) | Date | August 20, 2021 |
|---|---|---|---|
| Title | Jorge Perez v. Performance Food Group, Inc., et al. | | |

| | |
|---|---|
| Worked in Warehouse Position That Was Paid Vacation, But Which Was Paid At PFG Alternative Rate Calculation ("ARC") Rate or Did Not Receive Non-Discretionary Incentive Pay, During Settlement Class Period Through December 31, 2015 (to the end of the *Laumea* Settlement Class Period) | 0.25 |
| Worked in Warehouse Position That Was Never Paid Vacation, or, If Paid Vacation, Was Paid Vacation At PFG ARC Rate or Did Not Receive Non-Discretionary Incentive Pay, During Settlement Class Period On or After January 1, 2016 (after the end of the *Laumea* Settlement Class Period) | .50 |

To calculate the share of the Net Settlement Fund that would be paid to a Class Member, the Fund will be multiplied by the following fraction: (Total Points for Class Member)/(Total Points for All Non-Excluded Class Members). *Id.* The Settlement Administrator will perform this calculation based on the records provided through the administrative process. *Id.* Class Members may dispute the calculation of their awards by submitting a dispute to the Settlement Administrator no later than 45 days after the mailing of the Notice of Class Action Settlement. *Id.* ¶ 26. The Settlement Agreement provides that the Settlement Administrator will make a determination regarding any such dispute that is "final for purposes of administering notice of the Settlement, subject to final review, determination and approval by the Court." *Id.*

The Settlement Agreement also provides that the Settlement Administrator will prepare appropriate tax forms and that employer taxes will be paid from, and not in addition to, the Net Settlement Fund. *Id.* ¶¶ 14, 29(c). It states that each Class Member's settlement payment will be allocated, for tax purposes, among the following in equal amounts: (i) unpaid wages; (ii) civil or statutory penalties; (iii) statutory or other non-wage damages; and (iv) interest. *Id.* ¶ 29(a).

    C.    Notice

Timely notice of the settlement to members of the Settlement Class was provided by Simpluris, Inc. (the "Settlement Administrator"). Dkt. 200-1 ¶ 1. On January 10, 2020, the Settlement Administrator mailed the court-approved Notice to all 1133 class members. *Id.* ¶ 8. The Notice provided information about the following: the principal terms of the settlement, including the claims to be released; the definition of the Class; the estimated payment to the specific Class Member receiving the Notice; the procedures for objecting to the estimated payment; and the procedures for opting out of the settlement. *Id.* at 6. The notices to 1133 class members were sent by first class mail. *Id.* ¶ 8. Of those sent, 68 were returned to the Settlement Administrator as undeliverable. *Id.* ¶ 8. Following further research, updated addresses were obtained and the returned notices were sent to those addresses. Ultimately, there were 19 notices that were undelivered. *Id.* ¶ 9.

As of March 10, 2020, the settlement administrator had received neither any requests to opt out nor any objections to the Settlement Agreement. *Id.* ¶¶ 13–14.

    D.    Settlement Administration Costs

Plaintiff states the costs of settlement administration will be $9000. Dkt. 200-1 ¶ 16.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-00357 JAK (SKx) | Date | August 20, 2021 |
|---|---|---|---|
| Title | Jorge Perez v. Performance Food Group, Inc., et al. | | |

    E.    Incentive Awards

The named Plaintiff requests the approval of an incentive (or enhancement) award of $5000. Settlement Agreement, Dkt. 183-4 ¶ 19.

    F.    Attorney's Fees and Costs

Plaintiff's Counsel seeks an award of up to $258,333.33, in attorney's fees, and reimbursement for actual costs incurred prosecuting this action, not to exceed $50,000. *Id.* ¶ 18.

**III.**    **Analysis**

    A.    Class Certification

The Preliminary Approval Order analyzed whether conditional certification of the Settlement Class was appropriate. Dkt. 185 at 10–16. That analysis, which is incorporated by this reference, concluded that it was. The analysis of these factors, and the resulting outcome have not changed. Therefore, the Final Approval Motion is **GRANTED** as to certification of the Settlement Class for the reasons stated in the Preliminary Approval Order.

    B.    Final Approval of the Settlement Agreement and Award of Class Representative Enhancement

        1.    Legal Standards

Fed. R. Civ. P. 23(e) requires a two-step process in considering whether to approve the settlement of a class action. *First*, in the preliminary approval process, a court must make a preliminary determination as to whether the proposed settlement "is fundamentally fair, adequate, and reasonable." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003)). At this stage, the settlement need only be potentially fair." *Id.*

*Second*, if preliminary approval is granted, class members are notified and invited to make any objections. Upon reviewing the results of that notification, a court makes a final determination as to whether an agreement is "fundamentally fair, adequate, and reasonable." *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).

In evaluating fairness, a court must consider "the fairness of a settlement as a whole, rather than assessing its individual components." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818-19 (9th Cir. 2012). In making this determination, courts in the Ninth Circuit often apply the seven *Hanlon* factors:

    (1) the strength of the plaintiff's case;
    (2) the risk, expense, complexity, and likely duration of further litigation;
    (3) the amount offered in settlement;
    (4) the extent of discovery completed and the stage of the proceedings;
    (5) the experience and views of counsel;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV17-00357 JAK (SKx) | Date | August 20, 2021 |
| Title | Jorge Perez v. Performance Food Group, Inc., et al. | | |

    (6) any evidence of collusion between the parties; and
    (7) the reaction of the class members to the proposed settlement.

*See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458-60 (9th Cir. 2000) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

Each factor does not necessarily apply in every class action proceeding, and the consideration of other factors may be appropriate. For example, courts often consider whether the settlement is the product of arm's length negotiations. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution.").

Fed. R. Civ. P. 23(e) provides further guidance in evaluating whether a proposed settlement is fair, adequate and reasonable. Fed. R. Civ. P. 23(e) identifies the following as issues that may be considered:

    (A) the class representatives and class counsel have adequately represented the class;
    (B) the proposal was negotiated at arm's length;
    (C) the relief provided for the class is adequate, taking into account:
        (i) the costs, risks, and delay of trial and appeal;
        (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
        (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
        (iv) any agreement required to be identified under Rule 23(e)(3);[4] and
    (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The factors set forth in Fed. R. Civ. P. 23(e) adopt many of the aforementioned factors historically used by federal courts. As the comments of the Advisory Committee explain, "[t]he goal of [the] amendment [was] not to displace any factor" that would have been relevant prior to the amendment, but rather to address inconsistent "vocabulary" that had arisen among the circuits and "to focus the court and the lawyers on the core concerns" of the fairness inquiry. Advisory Committee Comments to 2018 Amendments to Rule 23.

    2.    <u>Application</u>

        a)    Analysis in the Preliminary Approval Order as to Overall Fairness

The Preliminary Approval Order addressed many of the aforementioned factors. Dkt. 185 at 17–22. None of the facts and circumstances as to any of them has changed since that time. However, because the settlement administrator has completed the notice process, the reaction of members of the

---

[4] Fed. R. Civ. P. 23(e)(3) provides that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV17-00357 JAK (SKx) | Date | August 20, 2021 |
| Title | Jorge Perez v. Performance Food Group, Inc., et al. | | |

Settlement Class to the proposed settlement may now be considered in evaluating whether it is fair and appropriate.

As noted, of the 1114 class members successfully contacted, none opted out or objected. Dkt. 200-1 at ¶ 8, 9, 13. A low proportion of opts outs and objections "indicates that the class generally approves of the settlement." *In re Toys R Us-Delaware, Inc. -- Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 456 (C.D. Cal. 2014) (citing cases); *see also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." (quoting *Nat'l Rural Telecomms. Corp. v. DirecTV, Inc.*, 221 F.R.D. 523, 528-29 (C.D. Cal. 2004))). Therefore, this factor weighs in favor of final approval.

Since the Preliminary Approval Order was issued, the Ninth Circuit clarified that a district court in balancing of the *Hanlon* factors and applying of the Rule 23(e) guidance, must examine the terms of the Settlement Agreement for the presence of any "red flags" that indicate collusion between the settling parties at the expense of the absent class members, and "scrutinize them where they appear." *Briseño v. Henderson*, 998 F.3d 1014, 1027 (9th Cir. 2021). *Briseño* identified three specific red flags: an attorney's fee award that is "disproportionate" to the overall settlement; an agreement among counsel not to challenge the amount of fees requested, and a reversion of unclaimed funds to the defendant rather than to the members of the class. *Id.* at 1026–27.

For reasons discussed in more detail below, the amount of the requested attorney's fee award is fair and reasonable. Nor will any unclaimed funds revert to Defendant. *Id.* ¶ 31. Thus, the only potential red flag is the agreement by Defendant not to oppose Class Counsel's fee request – a "clear sailing" provision. *See id.* ¶ 18. ¶. However, as *Briseño* noted, the presence of a clear-sailing provision, standing alone, is not "an independent basis for withholding settlement approval." *Briseño*, 998 F.3d at 1027.

Here, the parties agreed that if only a portion of the requested fee award was approved, the unapproved amount would remain as a part of the Net Settlement Fund, and not returned to the Defendant. This avoided the concerns as to potential collusion addressed in *Briseño*. *See* Settlement Agreement, Dkt. 183-4 ¶ 20; *see also Briseño*, 998 F.3d at 1027 (when "excessive fees" are returned to defendant, "a class member may not have standing to object" to the fee request). For these reasons, there is a sufficient showing that the clear-sailing provision in the Settlement is not evidence of collusion between the parties or their counsel to the detriment of members of the Class.

Because there have been no material changes in any of the relevant circumstances since the Preliminary Approval Order, the same determinations are warranted at this time with respect to the fairness analysis. Therefore, the distribution of the settlement funds in the manner approved in the Preliminary Approval Order is accepted.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV17-00357 JAK (SKx) | Date | August 20, 2021 |
| Title | Jorge Perez v. Performance Food Group, Inc., et al. | | |

    b)  Enhancement Award for Plaintiff

Plaintiff renews his arguments for a $5000 incentive award. Based upon the named Plaintiff's involvement and level of work, this amount of compensation warranted. Therefore, the incentive award of $5000 is approved.

  C.  Attorney's Fees and Costs

    1.  <u>Legal Standards</u>

Attorney's fees and costs "may be awarded in a certified class action where so authorized by law or the parties' agreement." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). However, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Id.*; *see also* Fed. R. Civ. P. 23(h). "If fees are unreasonably high, the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members or less injunctive relief for the class than could otherwise have [been] obtained." *Staton*, 327 F.3d at 964. Thus, a district court must "assure itself that the fees awarded in the agreement were not unreasonably high, so as to ensure that the class members' interests were not compromised in favor of those of class counsel." *Id.* at 965.

Factors considered in examining the reasonableness of the fee include: (1) whether the results achieved were exceptional; (2) risks of litigation; (3) non-monetary benefits conferred by the litigation; (4) customary fees for similar cases; and (5) the contingent nature of the fee and financial burden carried by counsel. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002).

In common fund cases, a district court has discretion to choose either "the percentage-of-the-fund or the lodestar method" to assess the reasonableness of the amount of attorney's fees that is requested. *Id.* at 1047. When the percentage-of-fund method is applied, 25% of the total settlement amount is the "benchmark." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 273 (9th Cir. 1989). Any amount between 20–30% is within the "usual range." *Vizcaino*, 290 F.3d at 1047. That amount may be "adjusted upward or downward to account for any unusual circumstances involved in [the] case." *Paul*, 886 F.2d at 272.

Although 25% is the "starting point," it may in some cases constitute a windfall for counsel. *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002). For this reason, the selection of the benchmark or any other rate "must be supported by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. If a court elects to employ a percentage-of-fund method, it may "cross-check" this amount by calculating the lodestar. *Id.* at 1050. "Thus, while the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award." *Id.*

"The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth,* 654 F.3d at 941. After the lodestar amount is determined, a trial court "may adjust the lodestar upward or downward using a 'multiplier'

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-00357 JAK (SKx) | Date | August 20, 2021 |
|---|---|---|---|
| Title | Jorge Perez v. Performance Food Group, Inc., et al. | | |

based on factors not subsumed in the initial calculation of the lodestar." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000). A court has discretion to "adjust the lodestar upward or downward using a multiplier that reflects a host of reasonableness factors, including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Stetson v. Grissom*, 821 F.3d 1157, 1166–67 (9th Cir. 2016) (internal quotation marks and citation omitted).

    2.    Application

        a)    Attorney's Fees

Under the terms of the Settlement Agreement, Class Counsel may apply for an award of attorney's fees of up to one-third of the Gross Settlement Fund, i.e., $258,333.33. *See* Settlement Agreement, Dkt. 183-4 ¶ 18. "The typical range of acceptable attorneys' fees in the Ninth Circuit is 20 percent to 33.3 percent of the total settlement value, with 25 percent considered a benchmark percentage." *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 448 (E.D. Cal 2013). Counsel seeks the entire amount authorized under the Settlement Agreement, $258,333.33. Dkt. 198 at 21. Plaintiff's counsel also seeks to recover $30,390.57 as reimbursement for litigation costs. *Id.* at 17.

In this action, there is little risk that an award of 33% would be a windfall for counsel. *Schroeder v. Envoy Air, Inc.*, No. CV 16-4911-MWF (KSX), 2019 WL 2000578, at *7 (C.D. Cal. May 6, 2019) *Compare Schiller v. David's Bridal, Inc.*, No. 1:10-CV-616-AWI, 2012 WL 2117001, at *17 (E.D. Cal. June 11, 2012) (approving a nearly 33% award in fees in a case involving a settlement fund of $518,245), *and Franco v. Ruiz Food Prod., Inc.*, No. 1:10-CV-02354-SKO, 2012 WL 5941801, at *2 (E.D. Cal. Nov. 27, 2012) (approving a 33% award in fees in a case involving a settlement fund of $2.5 million), *and Hofstetter v. Chase Home Fin., LLC*, No. 10-cv-1313-WHA, 2011 WL 5545912, at *1 (N.D. Cal. Nov. 14, 2011) (approving a 33% award in fees in a case involving a settlement fund of nearly $10 million), *with In re Bluetooth*, 654 F.3d at 942–44 (noting that an award of 25% or more in "megafund" settlements, cases of more than $50 million, would yield windfall profits for counsel). However, pursuant to *Vizcaino*, 290 F.3d at 1050, the requested figure is subject to review through the lodestar process.

        (1)    Time Spent by Class Counsel

Class counsel submitted evidence, which included time records, to support the proposed fee award. *See* Exhibits A and B to Setareh Decl., Dkts. 199-1, 199-2. These records reflect that ten attorneys together worked approximately 480 hours litigating the action. *Id.*; *see also* Setareh Decl. ¶ 27. The evidence also includes the respective hourly rates of each attorney. *Id.* When the hours worked by each attorney are multiplied by the corresponding hourly rates, the resulting lodestar amount is $297,067.75

        (2)    Hourly Rates

In determining a reasonable hourly rate, "[t]he fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Jordan v. Multnomah Cty.*, 815 F.2d 1258, 1263 (9th Cir. 1987).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV17-00357 JAK (SKx) | Date | August 20, 2021 |
| Title | Jorge Perez v. Performance Food Group, Inc., et al. | | |

The attorneys who worked on this matter have substantial experience in complex employment litigation. They presented evidence that their firm has reached favorable settlements in more than 100 wage-related class actions during the last ten years. Setareh Decl. ¶ 4. In the declaration of named partner Shaun Setareh, he cited more than 20 prior wage-and-hour class actions in which he served as lead or class counsel. *Id.* ¶ 10. Similarly, since 2006, Thomas Segal has been working almost exclusively on plaintiff's side class actions and complex litigation. *Id.* ¶ 17. William Pao was admitted to practice in California in 2002, and has spent most of his legal career counseling employers on compliance with California's wage and hour laws, and has been a class action litigator for Setareh Law Group since 2016. *Id.* ¶ 18. Setareh also attests that Farrah Grant has more than five years of experience litigating employment wage and hour class actions, and that Stacey Shim has approximately four years of such experience. *Id.* ¶¶ 19, 20. Plaintiff's counsel also identified many similar cases in which hourly rates in the same range as those proposed here were approved. *Id.* ¶¶ 12, 17–20; *see also id.* ¶¶ 24–26 (discussing associates whose hourly rate is below the Laffey Matrix rate). Finally, Plaintiff has submitted evidence that explains the higher hourly rate ($850) for Shaun Setareh. *Id.* ¶¶ 21–22.

Based on the evidence that has been presented, as well as the Court's familiarity with hourly rates that are charged within this District, the proposed rates are within the range of reasonableness.

            (3)     <u>Hours Billed</u>

The lodestar figures for the work performed by Plaintiff's counsel are summarized in the following table. It includes work for both the recent filings, as well as those associated with the Preliminary Approval Motion. *See* Dkt. 199; Dkt. 176-1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-00357 JAK (SKx) | Date | August 20, 2021 |
|---|---|---|---|
| Title | Jorge Perez v. Performance Food Group, Inc., et al. | | |

| Attorney | Preliminary Approval Hours[5] | Preliminary Approval Hourly Rate | Preliminary Approval Fees | Final Approval Hours[6] | Final Approval Hourly Rate | Final Approval Fees[7] |
|---|---|---|---|---|---|---|
| Shaun Setareh | 92.75 | $750 | $69,562.50 | 89.25/10 | **$850** | $75,862.50/$8,500 |
| Thomas Segal | 124.15 | $650 | $80,697.50 | 135.65 | **$700** | $94,955 |
| William M. Pao | 10.8 | $450 | $4,860.00 | 10.8 | **$550** | $5,940 |
| Tuvia Korobkin | 3.0 | $550 | $1,650.00 | 3 | $550 | $1,650 |
| Neil Larsen | 9.3 | $450 | $4,185.00 | 9.3 | $450 | $4,185 |
| Farrah Grant | 152.92 | $425 | $64,991.00 | 180.67/15 | **$450** | $81,301.50/$6,750 |
| Alice Kim | 11.2 | $400 | $4,480.00 | 11.2 | $400 | $4,480 |
| Stacey Shim | 21.5 | $300 | $6,450.00 | 21.5 | $300 | $6,450 |
| Ashley Batiste | 9.75 | $375 | $3,656.25 | 10.25 | $375 | $3,843.75 |
| Lilit Ter-Astvatsatryan | 8.0 | $350 | $2,800.00 | 9 | $350 | $3,150 |
| **Total** | **443.37** | - | **$243,332.25** | **480.62/25** | - | **$297,067.75** |

The recent declarations state that the hourly rates of four attorneys (bolded in the table) have increased since the time of the Preliminary Approval Motion. However, an across-the-board increase in rates is not appropriate to apply to those hours worked prior to the filing of the Preliminary Approval Motion when the rates were lower. Therefore, the appropriate adjustments are summarized in the below table:

| Attorney | Preliminary Approval Fees | Additional Hours[8] | Increased Hourly Rate | Adjusted Final Approval Fees | Total Fees |
|---|---|---|---|---|---|
| Shaun Setareh | $69,562.50 | 6.5 | $850 | $5,525 | $75,087.50 |
| Thomas Segal | $80,697.50 | 11.5 | $700 | $8,050 | $88,757.50 |
| William M. Pao | $4,860.00 | 0 | $550 | | $4,860 |
| Tuvia Korobkin | $1,650.00 | | | | $1,650 |
| Neil Larsen | $4,185.00 | | | | $4,185 |
| Farrah Grant | $64,991.00 | 42.75 | $450 | $19,237.50 | $84,228.50 |
| Alice Kim | $4,480.00 | | | | $4,480 |
| Stacey Shim | $6,450.00 | | | | $6,450 |
| Ashley Batiste | $3,656.25 | | | | $3,843.75 |
| Lilit Ter-Astvatsatryan | $2,800.00 | | | | $3,150 |
| **Total** | | | | | **$276,692.25** |

---

[5] Setareh Decl., Dkt. 176-1 ¶ 36.
[6] Setareh Decl., Dkt. 199 ¶ 27. The entries for "10," "15," and "25" hours in this column are the hours Class Counsel estimates to be expended after the Court grants final approval. *See id.*
[7] The entries for "$8,500" and "6,750" are the calculated attorney's fees for the estimated additional hours to be expended after this Order issues. *See id.*
[8] Setareh Decl., Dkt. 199 ¶ 27

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-00357 JAK (SKx) | Date | August 20, 2021 |
|---|---|---|---|
| Title | Jorge Perez v. Performance Food Group, Inc., et al. | | |

The billing records that have been submitted also describe tasks performed by each attorney. They include the corresponding amount of time spent on each task, and the resulting charge based on the number of hours worked multiplied by the applicable hourly rate. *See* Exhibit B to Setareh Decl., 199-2. Based on a review of this Exhibit, amounts associated with two specific line items are not appropriate. First, Setareh reports that he spent 32 hours on miscellaneous tasks, *id.* at 3, which represents $27,200 in fees. This generic description, without more, is not sufficient to support an award of the corresponding fees or deem them reasonable. *See In re Bluetooth,* 654 F.3d at 941 (requiring that reasonable expended hours must be "supported by adequate documentation"). Similarly, Farrah Grant, the associate who performed a very large percentage of the work on this matter, reported 40.6 hours of the total 54.6 hours of communications among attorneys within the firm. *See* Exhibit B to Setareh Decl., 199-2 at 2. The documentation provided as to these communications and their importance to the litigation is not sufficient to support this $18,270 charge.

Subtracting both of these amounts from the previously adjusted total of $276,692.25, results in a final lodestar calculation of $231,222.25. The requested award of $258,333.33 represents a performance multiplier of approximately 1.11 over the $221,222.25 adjusted lodestar amount ($258,333.33 / $231,222.25 = 1.11).

As noted in the Preliminary Approval Order, "Class Counsel assumed substantial risk in pursuing this litigation, and it has resulted in a significant monetary settlement." Dkt. 185 at 25. These factors support an award of $258,333.33. Other courts have approved an attorney's fees request of one-third of common fund in part "[b]ecause the lodestar cross check revealed a relatively low multiplier of 1.48." *Martin v. FedEx Ground Package Sys., Inc.*, 2008 WL 5478576, at *8 (N.D. Cal. Dec. 31, 2008). Here, the multiplier is lower. Further, lodestar multipliers of up to three to four have been applied in prior complex class-action cases. *See, e.g., Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal.1995). In sum, the lodestar crosscheck confirms the reasonableness of the 33% award.

For these reasons, the Attorney's Fees Motion is **GRANTED** as to the request for attorney's fees, and a payment of attorneys' fees of $258.333.33 is approved.

      b)  Costs

The Preliminary Approval Order approved an award of up to $50,000 in costs. Dkt. 185 at 25. Plaintiff's counsel seeks an award of only $30,390.57 in costs. This is less than the $50,000 authorized in the Settlement Agreement. Dkt. 198 at 17. Plaintiff's counsel have also provided an itemized accounting of costs, which supports this lower amount. *See* Exhibit C to Setareh Decl., Dkt. 199-3. The costs include PACER charges, filing and document fees, airfare, parking, rideshare charges, data analysis charges and mediation fees. *Id.* A review of these costs confirms that all were reasonable and necessary.

For these reasons, the Attorney's Fees Motion is **GRANTED** as to the request for the reimbursement of costs of $30,390.57.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV17-00357 JAK (SKx) | Date | August 20, 2021 |
| Title | Jorge Perez v. Performance Food Group, Inc., et al. | | |

**IV.    Conclusion**

For the foregoing reasons, the Final Approval Motion is **GRANTED**, and the Attorney's Fees Motion is **GRANTED**, under the terms stated in this Order. Judgment shall be entered dismissing the action with prejudice; provided, however, that the Court shall retain jurisdiction with respect to any issues that arise as to the disbursement of unclaimed settlement funds and related matters. Counsel shall lodge a proposed final judgment in Word format on or before 10 days after the issuance of this Order. On or before October 1, 2021, the parties shall submit a joint report setting forth their collective and/or respective views as to whether any issues relating to the disbursement of settlement funds remain, and, if so, a proposed method and schedule for their resolution.

**IT IS SO ORDERED.**

:

Initials of Preparer    dr

cc: Fiscal